UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRITPAL SINGH MANN,<br><br>             Plaintiff,<br><br>      v.<br><br>GERARD HEINAUER, Director, USCIS Nebraska Service Center; ALEJANDRO MAYORKAS, Director, USCIS; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; JANET NAPOLITANO, Secretary, U.S. Department of Homeland Security; ERIC H. HOLDER, JR., U.S. Attorney General,<br><br>             Defendants. | No. 2:13-cv-703-GEB-EFB<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANTS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Pending are what the parties have labeled cross-motions for summary judgment. However, each motion only addresses the first of the following two claims alleged in Plaintiff's Complaint: 1) violation of the Administrative Procedure Act ("APA"); and 2) violation of the Fifth Amendment Due Process Clause. Therefore, each motion is construed as a motion for partial summary judgment on only the APA claim.

**I. LEGAL STANDARD**

A party seeking summary judgment under Federal Rule of Civil Procedure ("Rule") 56 bears the initial burden of demonstrating the absence of a genuine issue of material fact for

1

trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case." Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). An issue of material fact is "genuine" when "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. (quoting Anderson, 477 U.S. at 248).

If the movant satisfies its "initial burden," "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting former Fed. R. Civ. P. 56(e)). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of material in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Summary judgment "evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party." Sec. & Exch. Comm'n v. Todd, 642 F.3d 1207, 1215 (9th Cir. 2011) (citing Johnson v. Paradise Valley Unified Sch. Dist., 251 F.3d 1222, 1227 (9th Cir. 2001)).

Further, Local Rule 260(b) prescribes:

Any party opposing a motion for summary

2

> judgment or summary adjudication [must] reproduce the itemized facts in the [moving party's] Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial.

If the nonmovant does not "specifically . . . [controvert duly supported] facts identified in the [movant's] statement of undisputed facts," the nonmovant "is deemed to have admitted the validity of the facts contained in the [movant's] statement." Beard v. Banks, 548 U.S. 521, 527 (2006).

> Because a district court has no independent duty "to scour the record in search of a genuine issue of triable fact," and may "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment," . . . the district court . . . [is] under no obligation to undertake a cumbersome review of the record on the [nonmoving party's] behalf.

Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010) (quoting Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996)); see also Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

## II. UNCONTROVERTED FACTS

The following facts are uncontroverted in the summary judgment record.

"[Plaintiff] applied for asylum . . . on September 16, 1991." (Defs.' Resp. to Pl.'s Statement of Undisputed Facts ¶ 1, ECF No. 31.) "[The government] referred [Plaintiff]'s asylum application to an immigration judge and commenced removal

3

proceedings against him." (Defs.' Statement of Undisputed Facts ("Defs.' Statement") ¶ 7, ECF No. 31; Pl.'s Resp. to Defs.' Statement of Undisputed Facts ("Pl.'s Resp.") 1:27-2:1, ECF No. 35.) "[The government] opposed Mann's asylum application in immigration court on the basis that he had provided material support to an undesignated terrorist organization, Babbar Khalsa." (Defs.' Statement ¶ 8; Pl.'s Resp. 1:27-2:1.) "[T]he immigration judge held that the record d[id] not support the conclusion that [Plaintiff] is a danger to the security of the United States and, therefore, [Plaintiff] [was] not subject to the mandatory bar [to asylum] under the [applicable] regulation." (Defs.' Statement ¶ 12; Pl.'s Resp. 1:27-2:1.) However, "[t]he immigration judge denied [Plaintiff]'s application for asylum after finding" Plaintiff had not adequately demonstrated fear of persecution, and "[t]he immigration judge further determined that even if [Plaintiff] had experienced persecution within the meaning of the [Immigration and Naturalization Act], he did not merit a discretionary grant of asylum because Babbar Khalsa had been 'operating as a terrorist organization' during the time period that [Plaintiff] 'was providing assistance to people that he knew . . . belonged to Babbar Khalsa.'" (Defs.' Statement ¶¶ 13, 14; Pl.'s Resp. 1:27-2:1.)

On appeal, "[t]he B[oard of Immigration Appeals] [('BIA')] held that [Plaintiff] had a well-founded fear of persecution," "agreed with the immigration judge that [Plaintiff] 'is not a danger to the security of the United States' under the asylum regulation," prescribed in 8 C.F.R § 1208.13(c)(2)(i)(F), and "granted [Plaintiff] asylum." (Defs.' Statement ¶¶ 26, 27

4

(quoting Not. of Lodging, Cert. Admin. R. ("CAR") 25, Feb. 16, 2005 Dec. of BIA, ECF No. 15), 25; Pl.'s Resp. 1:27-2:1.)

Subsequently, "[Plaintiff] filed an . . . Application to Register Permanent Residence or Adjust Status ('adjustment application')," with the United States Citizenship and Immigration Services ("USCIS"), "seeking to obtain lawful permanent resident status . . . on the basis of his asylee status . . . ." (Defs.' Statement ¶ 29; Pl.'s Resp. 1:27-2:1.) The USCIS denied Plaintiff's application for adjustment, stating:

> [Plaintiff] [is] inadmissible [and therefore ineligible for adjustment of status] under [8 U.S.C. § 1182(a)(3)(B)(i)(I)] for having engaged in terrorist activity as defined by [§ 1182(a)(3)(B)(iv)(VI)(dd)] when [he] gave material support to members of Babbar Khalsa by providing them food and shelter on numerous occasions.

(CAR 1110, Oct. 7, 2013 Dec. of USCIS.) The USCIS supported its decision stating, inter alia, the following:

> In a sworn statement [Plaintiff] made . . . at the San Francisco Asylum Office, [Plaintiff] stated that [he] willingly gave food and shelter to two acquaintances of [his] who [he] knew were members of Babbar Khalsa . . . about every two weeks from October, 1990 to March, 1991.
>
> At [his] Immigration Court hearing, . . . [w]hen asked . . . "Let me repeat again, after 1990 and until you left India you did feed, shelter and do laundry for two members of Babbar Khalsa?" [Plaintiff] answered "yes" . . . .
>
> . . . .
>
> A November 5, 2011 news article in India Today reported that "The longest-surviving Khalistani militant group, the Babbar Khalsa [] . . . , has been responsible for some of the biggest terrorist strikes including the mid-air bombing of Air India Flight 182

5

> Kanishka in 1985. . . .
>
> . . . .
>
> The United States Department of State reported in its 1999 Patterns of Global Terrorism, that Babbar Khalsa was extremely active until 1992 . . . . Babbar Khalsa killed indiscriminately from 1984 to 1990, became dormant in 1992, and was resurrected when it assassinated an [Indian politician] in 1995.

(CAR 1109-10, Oct. 7, 2013 Dec. of USCIS.)

### III. DISCUSSION

Plaintiff argues he should be granted summary judgment on his APA claim since the "USCIS's decision finding [him] inadmissible to the United States and denying his [adjustment application] is arbitrary, capricious, wholly unsupported by substantial evidence, and otherwise not in accordance with law." (Pl.'s Mot. 4:15-17, ECF No. 16.) The gist of Plaintiff's argument is that the doctrine of issue preclusion precludes "Defendants . . . from re-litigating the issue of terrorism-based admissibility." (Pl.'s Mot. 7:5-6, ECF No. 16.) Specifically, Plaintiff argues: "*Necessarily* implicit in [the BIA's grant of asylum is the] conclusion . . . that [Plaintiff] was not inadmissible based on the terrorism related grounds of inadmissibility." (Id. 7:10-14.)

Defendants counter that the issue preclusion doctrine does not apply to the USCIS's adjustment application decision since, inter alia, "[Plaintiff] cannot show that the material support [for terrorism] ground was necessary to decide the merits of [Plaintiff]'s asylum claim." (Defs.' Cross-Mot. 21:9-10, ECF No. 20.) Defendants also argue: "The record . . . supports

6

UCSIS's determination that Plaintiff provided material support to [the terrorist group] Babbar Khalsa" and "[t]hus, as a matter of law, USCIS's [denial of Plaintiff's adjustment application] is not arbitrary or capricious, and it should not be disturbed." (Id. 23:23-24, 24:10-11.)

The APA prescribes:

> [a] reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

5 U.S.C. § 706(2)(A).

The "issue preclusion [doctrine] . . . binds [] parties in a subsequent action, whether on the same or a different claim, when an issue of fact or law [has been] actually litigated and resolved by a valid final judgment." Fischel v. Equitable Life Assur. Soc'y of U.S., 307 F.3d 997, 1005 n.5 (9th Cir. 2002) (quoting Baker v. Gen Motors Corp., 522 U.S. 222, 233 n.5 (1998)) (internal quotation marks omitted). This doctrine

> applies to a question, issue, or fact when four conditions are met: (1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to the merits.

Oyeniran v. Holder, 672 F.3d 800, 806 (9th Cir. 2012). Here, only the second requirement—that "the issue was actually . . . decided in the prior proceeding[]" —need be addressed to resolve each motion.

Since Plaintiff filed his asylum application on September 16, 1991, the following regulation governed his

7

application:

> An immigration judge or asylum officer shall not grant asylum to any applicant who filed his or her application before April 1, 1997, if the alien:
>
> . . . .
>
> (F) Is described within[, inter alia, 8 U.S.C. § 1182(a)(3)(B)(i)(I) as "an alien who . . . has engaged in a terrorist activity"] . . . , unless it is determined that there are no reasonable grounds to believe that the individual is a danger to the security of the United States.

8 C.F.R. § 1208.13(c)(2)(i). The BIA decided Plaintiff's asylum application under the portion of § 1208.13(c)(2)(i) that concerns whether Plaintiff was a "danger to the security of the United States." Because of this decision, the record does not support a finding that the BIA "actually . . . decided in the prior proceeding[]," Oyeniran, 672 F.3d at 806, that Plaintiff "ha[d] not engaged in a terrorist activity" as prescribed in the first portion of § 1208.13(c)(2)(i)(F). Accordingly, the BIA's decision had no preclusive effect over the UCSIS's subsequent holding that Plaintiff was ineligible for adjustment of status "[since he] engaged in terrorist activity." (CAR 1110, Oct. 7, 2013 Dec. of USCIS.) Nor did the BIA's determination that Plaintiff "[was] not a danger to the United States" have preclusive effect on the USCIS's denial of adjustment of status since the statute governing Plaintiff's adjustment application, prescribed in 8 U.S.C. § 1159, does not contain an exception to the terrorist-activity bar for applicants who do not present a danger to the security of the United States. (Defs.' Statement ¶ 27; Pl.'s Resp. 1:27-2:1.)

         Therefore, Defendants have shown that the USCIS's decision denying Plaintiff adjustment of status "[since he] engaged in terrorist activity . . . when [he] gave material support to members of Babbar Khalsa by providing them food and shelter on numerous occasions," (CAR 1109-10, Oct. 7, 2013 Dec. of USCIS), was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

## IV. CONCLUSION

         For the stated reasons, Plaintiff's motion for partial summary judgment is DENIED, and Defendants' cross-motion for partial summary judgment is GRANTED.

Dated: July 2, 2014

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge